**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Ernesto Gonzalez, | No. CV-13-1616-PHX-JAT (JZB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Charles L. Ryan, et al., | |
| Respondents. | |

TO THE HONORABLE JAMES A. TEILBORG, UNITED STATES SENIOR DISTRICT JUDGE:

Petitioner Ernesto Gonzalez, who is confined in an Arizona State Prison, has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.)

**I.    SUMMARY OF CONCLUSION**

Petitioner's convictions became final on June 13, 2012. The deadline to file this habeas petition was June 14, 2013.  Petitioner did not begin habeas proceedings until June 27, 2013.   This petition is untimely and there is no evidence to suggest the untimeliness should be excused. The Court rejects Petitioner's claim that delays associated with a potential deposition of a codefendant merit an exception under *Schlup v. Delo*, 513 U.S. 298 (1995).

Additionally, Petitioner's claim under Ground One is precluded. Petitioner's claims under Grounds Two through Four are unexhausted and procedurally defaulted.

Petitioner does not satisfy cause and prejudice to excuse this default. Petitioner's actual innocence argument under *Herrera v. Collins*, 506 U.S. 390 (1993), if cognizable, also fails for the same reasons, mutatis mutandis, as his argument under *Schlup*: Petitioner fails to prove that no reasonable juror would have convicted him in the light of the new evidence. For the reasons that follow, the Court concludes that Petitioner's claims are untimely, procedurally barred from review, and fail on their merits. Therefore, the Court will recommend that the petition be denied.

## II.   BACKGROUND

### A.  FACTS OF THE CASE

The Arizona Court of Appeals found the following facts as true:[1]

> On December 26, 2007, Phoenix Police Officer Kartchner, along with other police units, responded to a call of a residential burglary involving armed suspects who had invaded a house and had fled. Officer McBride entered the house where the home invasion occurred and did a protective sweep of the interior. He did not find armed subjects or anything of evidentiary value inside. However, as he and other officers were walking around the perimeter of the house, they smelled a very strong odor of fresh marijuana emanating from the house next door. The officer decided to make contact with any individuals in that house to determine if the armed suspects were inside, if there were victims who needed protection and to investigate the source of the smell of marijuana.
>
> A team of officers knocked on the door and were yelling loudly. They heard a car alarm go off in the garage and could hear movement inside the garage. [Petitioner] opened the front door. Officer McBride observed that he was "extremely agitated" and was talking back to the officers. He was aggressive and did not want to come outside to speak to them. With the door open, the officers could smell an even stronger odor of marijuana coming from the house. The officers proceeded to enter the house to do a protective sweep and to investigate the odor of marijuana. They found large bales of marijuana throughout the house and in the garage. They also found [Gonzalez-Garcia] hiding in a closet in the bathroom of the master bedroom.
>
> Detective Rice testified that based on his training and experience, he believed that the home invaders had targeted the wrong residence and that the house where officers found the marijuana was a "stash house" where large amounts of drugs are stored and distributed. Detective Chadwick executed a search warrant that Detective Bensen obtained after the initial entry into the stash house. He seized 80 bales of marijuana, numerous items used for wrapping, packaging and concealing marijuana, drug transaction

---

[1] The Arizona Court of Appeals' recitation of the facts is presumed correct. *See* 28 U.S.C. § 2254(d)(2), (e)(1); *Runningeagle v. Ryan*, 686 F.3d 758, 763 n.1 (9th Cir. 2012) (rejecting argument that statement of facts in state appellate court's opinion should not be afforded the presumption of correctness).

2

ledgers and a set of keys found on [Petitioner], one of which fit the stash house door.

Core samples of the bales were tested and revealed that the substance was marijuana and that the total weight was 1,672 pounds. Detective Bensen estimated that 1,672 pounds of marijuana had a street value of $836,000 or more and that the marijuana was possessed for sale. At trial, the jury was shown a video of [Gonzalez-Garcia] purchasing numerous items of drug paraphernalia.

(Doc. 12, Exh. J at 3-5.)

## B. PROCEEDINGS AT TRIAL

On January 4, 2008, the State indicted Petitioner and codefendant Alexander Gonzalez-Garcia on possession of marijuana for sale and possession of drug paraphernalia. (Doc. 12, Exh. A.)  The indictment also charged Gonzalez-Garcia with possession of dangerous drugs for sale and resisting arrest.  (Doc. 12, Exh. A.)  Prior to trial, Petitioner joined in a motion to suppress evidence (drugs and paraphernalia) found in the home where Petitioner was arrested. (Doc. 12, Exh B.) After an evidentiary hearing, the court denied the motion.  (Doc. 12, Exhs. C, D, E.) Petitioner also filed and renewed several motions to sever his trial from the codefendant.  The trial court denied these motions. (Doc. 12, Exhs. F, G, J.) The case proceeded to trial, where the jury found Petitioner guilty of both charges. (Doc. 12, Exh. J.) The judge found that Petitioner had four prior felony convictions and sentenced Petitioner to presumptive, concurrent sentences. (*Id.*)  Petitioner appealed. (*Id.*)

## C. PROCEEDINGS ON DIRECT APPEAL

In a timely, direct appeal, Petitioner's counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878(1969), asserting that counsel found no appealable issues.   (Doc. 12, Exh. I.) Appellate counsel identified two issues (denial of the motions to suppress and sever) that the Petitioner requested the court review on appeal. Petitioner declined an invitation to file a *pro se* supplemental brief. (Doc. 12, Exh. J.)

On June 29, 2010, the Arizona Court of Appeals affirmed the Petitioner's convictions. (*Id.*)  In a 12-page memorandum opinion, the court concluded that the initial warrantless entry and search were legal because the officers had probable cause to search

the house after smelling the "strong odor of marijuana emanating" from the home. (*Id.*) The court found there were also exigent circumstances because "of the possibility that armed suspects were attempting to flee, the potential for violence and the possibility of destruction of evidence." (*Id.*) During a justified protective sweep, officers lawfully found bales of marijuana in plain view. (*Id.*) The court found the "evidence obtained as a result of the search pursuant to the warrant was admissible." (*Id.*) The court also concluded that the motions to sever were properly denied because there was "substantial overlapping evidence against both defendants," there was "no danger arising from one defendant making incriminating statements against the other or offering antagonistic defenses," the jurors were properly instructed, and there was "nothing to suggest" that there was an unfair "rub-off effect" from the charges. (*Id.*)

On July 20, 2010, Petitioner filed a petition for review with the Arizona Supreme Court. (Doc. 12, Exh. K.)  On December 21, 2010, the court denied review.  (Doc 12, Exhs. L, M.)

### D. PETITION FOR POST-CONVICTION RELIEF

On July 20, 2010, Gonzalez filed a Notice of Post-Conviction Relief ("PCR"). (Doc. 12, Exh. N.) On January 2, 2012, counsel appointed for Petitioner filed a notice stating that after reviewing the case he was "unable to find any colorable claim for relief to raise in post-conviction relief proceedings." (Doc. 12, Exh. P.)  Petitioner was granted additional time to file a "Pro Per Petition for Post-Conviction Relief." (Doc. 12, Exh. Q.) On April 18, 2012, Petitioner filed his petition asserting actual innocence, prosecutorial misconduct at trial, and ineffective assistance of trial and appellate counsel. (Doc. 12, Exh. R.)

On June 11, 2012, the trial court dismissed the petition and found:

> Defendant raises claims of prosecutorial misconduct. Because all of these claims refer to matters set forth on the record, they are precluded because they were waived by failure to object at trial or by failing to raise the issues on appeal. Defendant also raises claims of actual innocence and of ineffective assistance of trial and appellate counsel. None of these claims

are colorable.

(Doc. 12, Exh U.)

Petitioner had 30 days to petition the court of appeals for review. *See* Ariz. R. Crim. P. 32.9(c) ("Within thirty days after the final decision of the trial court on the petition for post-conviction relief or the motion for rehearing, any party aggrieved may petition the appropriate appellate court for review of the actions of the trial court."). State records reflect, and Petitioner concedes, that he did not petition the court of appeals for review of the trial court decision. (Doc. 1 at 5.)

### E. FEDERAL PETITION FOR WRIT OF HABEAS CORPUS

On June 27, 2013, Petitioner filed the instant Petition for Writ of Habeas Corpus. (Doc. 1.)   Petitioner raises four grounds for relief. In Ground One, Petitioner alleges the trial court's failure to suppress drug-related evidence violated his rights under the Fourth and Fourteenth Amendments.  In Ground Two, Petitioner alleges the trial court's failure to sever his trial from his codefendant violated his rights under the Fourteenth Amendment. In Ground Three, Petitioner alleges the prosecutor committed misconduct by utilizing inflammatory language regarding the stash house. In Ground Four, Petitioner alleges actual innocence.

On March 25, 2014, the State filed a Response to the Petition. The State argues the Petition is untimely, Ground One is precluded, and Grounds Two through Four are unexhausted and procedurally defaulted.

On April 24, 2014, Petitioner filed a Reply.   Petitioner argues that actual innocence affords an exception to his untimeliness. Petitioner also argues he was diligent despite his untimeliness. He asserts that the investigator he hired had an unexpected medical issue that prevented a timely deposition of the codefendant, which caused his untimely Petition.  He also reasserts that the failure to suppress evidence and sever the trial was unconstitutional. Finally, he requests an accommodation because he is a non-lawyer operating in a restrictive environment.

### III.   APPLICATION OF LAW

The writ of habeas corpus affords relief to persons in custody pursuant to the judgment of a state court in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c)(3), 2254(a). Petitions for Habeas Corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).[2] 28 U.S.C. § 2244.

**A. THE PETITION IS UNTIMELY.**

The AEDPA imposes a one-year limitation period, which begins to run "from the latest of . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."   28 U.S.C. § 2244(d)(1)(A).

**1.  Time Calculation**

Here, the Arizona Supreme Court denied direct review on December 21, 2010. (Doc.12, Exhs. L, M.) A judgment becomes "final" under § 2244(d)(1)(A) when the time for filing a petition for review in the United States Supreme Court expires. *See Harris v. Carter*, 515 F.3d 1051, 1053 n.1 (9th Cir. 2008); *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002). Petitions for certiorari must be filed within 90 days after the Arizona Supreme Court issued its opinion or denied review. *Harris*, 515 F.3d at 1053 n.1. Thus, Petitioner's convictions would have become final on March 21, 2011, which is 90 days after the Arizona Supreme Court denied direct review.

On July 20, 2010, Petitioner filed a timely PCR notice, which tolled the limitations period. *See Isley v. Arizona Dept. of Corrections,* 383 F.3d 1054, 1055-56 (9th Cir. 2004).  On June 13, 2012, the trial court dismissed Petitioner's state PCR petition. (Doc. 12, Exh. U.) Because Petitioner did not move for rehearing or petition for review to the Arizona Court of Appeals, statutory tolling ended on the date the trial court "summarily dismissed" the PCR petition. *See Hemmerle v. Schriro*, 495 F.3d 1069, 1074 & n.4 (9th Cir. 2007) (properly filed PCR notice tolled AEDPA's statute of limitations until "summarily dismissed" by trial court, where prisoner did not petition for review of

---

[2] The AEDPA applies only to those cases that were filed after its effective date, April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

1    dismissal). Thus, the AEDPA statute of limitations began running the next day, June 14,

2    2012. Because statutory tolling ended on June 13, 2012, Petitioner had through June 14,

3    2013, to file a § 2254 petition. The Petition was filed, however, on June 27, 2013, which

4    is 13 days after the statute of limitations expired.[3]

5         The Petition is untimely because it was not filed within the deadline established by

6    28 U.S.C. § 2244(d)(1). Absent equitable tolling or other exception, the Petition will be

7    dismissed with prejudice, regardless of the margin of untimeliness. *See United States v.*

8    *Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000) (federal habeas petition submitted one day

9    late was properly dismissed as untimely under AEDPA, noting that a "missed" deadline

10   "is not grounds for equitable tolling"); *Hartz v. United States*, 419 Fed.Appx. 782, 783

11   (9th Cir. 2011) (unpublished) (affirming dismissal of federal habeas petition where

12   petitioner "simply missed the statute of limitations deadline by one day"); *Lookingbill v.*

13   *Cockrell*, 293 F.3d 256, 265 (5th Cir. 2002) ("[w]e consistently have denied tolling even

14   where the petition was only a few days late"); *United States v. Locke*, 471 U.S. 84, 100–

15   01 (1985) ("If 1-day late filings are acceptable, 10-day late filings might be equally

16   acceptable, and so on in a cascade of exceptions that would engulf the rule erected by the

17   filing deadline . . . A filing deadline cannot be complied with, substantially or otherwise,

18   by filing late—even by one day.").

19        Petitioner asserts that the Petition is not barred and argues the following:

20            The one-year statute of limitations does not bar this action because
             when the habeas petition was first filed Petitioner had pending in state court
21           a Rule 32 petition. (See Attachment "E" at 1–3.) The statute of limitations
             in the instant case was tolled and the one-year did not begin until after
22           issuance of the state court mandate issued at or around 7/12/12.

23   (Doc. 1 at 11.)

24        First, Petitioner's prior federal petition was filed and dismissed without prejudice

25   while the statute of limitations was already tolled by the ongoing state PCR proceeding.

26   The state PCR proceeding began on July 20, 2010 and ended on June 13, 2012.  The first

27   _____

28        [3] Although the Petition was filed on August 8, 2013, the Court affords Petitioner
     the benefit of having mailed the Petition on June 27, 2013.

1      federal habeas petition was filed on January 9, 2012 and was dismissed without prejudice
2      on January 27, 2012. All of the time concerning the first habeas petition was already
3      tolled.

4           Second, there is no record before the Court of a state mandate on July 12, 2012.
5      The only "mandate" that issued in this case was issued by the Arizona Court of Appeals
6      on January 25, 2011.[4] (Doc. 12, Exh. M.)  Petitioner's referenced date of July 12, 2012 is
7      approximately 30 days after the PCR petition was dismissed by the trial court, but the
8      time began to run immediately after the dismissal, not 30 days later.  Absent equitable
9      tolling, the Petition is untimely.

10                 **2. Equitable Tolling**

11           A habeas petitioner is entitled to equitable tolling "only if he shows '(1) that he
12      has been pursuing his rights diligently, and (2) that some extraordinary circumstance
13      stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649
14      (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 1814–15
15      (2005)). The petitioner bears the burden of showing that equitable tolling should apply.
16      *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005).  Equitable tolling
17      of the filing deadline for a federal habeas petition is available only if extraordinary
18      circumstances beyond the petitioner's control make it impossible to file a petition on
19      time. *See Chaffer v. Prosper*, 592 F.3d 1046, 1048–49 (9th Cir. 2010). Equitable tolling
20      is only appropriate when external forces, rather than a petitioner's lack of diligence,
21      account for the failure to file a timely habeas action. *See Chaffer*, 592 F.3d at 1048–49.
22      Equitable tolling is to be rarely granted. *See, e.g.*, *Waldron–Ramsey v. Pacholke,* 556
23      F.3d 1008, 1011 (9th Cir. 2009); *Jones v. Hulick*, 449 F.3d 784, 789 (7th Cir. 2006);
24      *Stead v. Head*, 219 F.2d 1298, 1300 (11th Cir.2000). Petitioner must show that "the
25      extraordinary circumstances were the cause of his untimeliness and that the extraordinary

26

27             [4] As noted previously, Petitioner concedes he did not appeal his PCR denial. (Doc.
28      1 at 5.)  The Court of Appeals issued its mandate after the conclusion of Petitioner's direct appeal.

circumstances made it impossible to file a petition on time." *Porter v. Ollison,* 620 F.3d 952, 959 (9th Cir.2010). "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.'" *Miranda*, 292 F.3d at 1066 (quoting *Marcello*, 212 F.3d at 1010).

In his Reply, Petitioner asserts equitable tolling should be granted because Petitioner hired a "consulting and management business" to depose the codefendant, but medical conditions by employees prevented the timely deposition. (Doc. 14 at 2.) The one-year statute of limitations for filing a habeas petition may be equitably tolled if extraordinary circumstances beyond a prisoner's control prevent the prisoner from filing on time. *See Holland*, 560 U.S. at 649; *Bills v. Clark*, 628 F.3d 1092, 1096–97 (9th Cir. 2010).

The Court does not find Petitioner has pursued his rights diligently. As an initial matter, the Court notes that a deposition of the codefendant has no bearing on Petitioner's first three claims (suppression, severance, and prosecutorial misconduct at trial). Also, the timeline of the investigation and deposition of the codefendant do not establish diligence. Petitioner's trial concluded in March of 2009, and his direct appeal concluded on December 21, 2010. Petitioner did not hire an investigator until February 4, 2013.[5] (Doc. 14 at 2.) Petitioner had the ability since 2009 to seek out the codefendant to determine if he could procure favorable evidence.  More importantly, Scott Barnes, Petitioner's consultant/investigator, states that he agreed with Petitioner to depose the codefendant prior to June 1, 2013.  Barnes had spoken to the codefendant and Barnes believed that the codefendant would reaffirm (in a deposition) that Petitioner had no "awareness of marijuana in the residence."  (Doc. 14, Exh. 5.) Barnes states that Barnes and Petitioner agreed the deposition would be concluded by June 1, 2013. (*Id.*) Barnes

---

[5] The Court affords Petitioner the benefit of this February 4, 2013 date.  The contract submitted by Petitioner as proof that an investigator was hired is dated February 4, 2014 on the first page. (Doc. 14, Exh. 4.) The final page of the contract also has two signature dates of February 4, 2014, although the execution date is listed as February 4, 2013.  (Doc. 14, Exh. 4.)   The Court assumes the investigator was hired in 2013.

further states that the deadline was not met. (*Id.*)  Petitioner was thus aware that he did not have a deposition of the codefendant's statements on June 1, 2013. Petitioner was in the same position on June 1, 2013 as he was on June 27, 2013 when he mailed the Petition.  The same information was known to Petitioner before the deadline that was known to Petitioner on the date he mailed the Petition. There is no excuse for Petitioner to have waited beyond June 13, 2013 to file the Petition. Stated differently, Petitioner filed a late Petition with the same information he could have filed in a timely Petition. The Petitioner must establish a causal connection between the alleged roadblock to the timely filing of their federal habeas petition and the actual failure to file the Petition on time. *See Gaston v. Palmer*, 417 F.3d 1030, 1034 (9th Cir. 2003).

Moreover, Petitioner still did not depose the codefendant from the time he filed his Petition (June 27, 2013) to the date of his Reply (April 24, 2014), which is an additional period of more than nine months. Petitioner's investigator asserts that the codefendant "has moved to the State of California, and we remain in efforts to locate him to conclude our breached duty to" Petitioner. (Doc. 14, Exh. 5.)  The ongoing failure to procure evidence does not reflect diligence. Petitioner bears the burden of proving his entitlement to the equitable tolling of his statute of limitations. *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003).

Petitioner's assertion that he is "untrained in the law" and "inexperienced" is unavailing.  (Doc. 14, at 7.) Petitioner's *pro se* status, indigence, limited legal resources, ignorance of the law, or lack of representation during the applicable filing period do not constitute extraordinary circumstances justifying equitable tolling. *See, e.g.*, *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) ("[A] pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling.").

### 3. Actual Innocence

To avoid a miscarriage of justice, the statute of limitations in 28 U.S.C. § 2244(d)(1) does not preclude this Court from entertaining an untimely first federal habeas

petition raising a convincing claim of actual innocence. "Actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . [or] expiration of the statute of limitations." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). "When an otherwise time-barred habeas petitioner 'presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error,' the Court may consider the petition on the merits. *See Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L.Ed.2d 808 (1995)." *Stewart v. Cate*, 757 F.3d 929, 939 (9th Cir. 2014).

To invoke this exception to the statute of limitations, a petitioner "'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Perkins*, 133 S. Ct. at 1935 (quoting *Schlup*, 513 U.S. at 327). This exception, referred to as the "*Schlup* gateway," applies "only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Perkins,* 133 S.Ct. at 1936 (quoting *Schlup*, 513 U.S. at 316). Such a claim must be founded upon "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. However, "the habeas court's analysis is not limited to such evidence," but rather "the habeas court must consider 'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" *House v. Bell*, 547 U.S. 518, 537–38 (2006) (quoting *Schlup*, 513 U.S. at 327–28). Significantly, "[t]his is a high threshold that is rarely met." *Lee v. Lampert*, 653 F.3d 929, 945 (9th Cir. 2011). *See also Perkins*, 133 S. Ct. at 1928 ("tenable actual-innocence gateway pleas are rare").

Here, Petitioner fails to present anything other than his assertions and the affidavit of an investigator.   Despite his claim that the codefendant would exonerate him,

11

Petitioner does not have an affidavit from the codefendant.  *Schlup* instructed that a claim of actual innocence must be supported by "new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup*, 513 U.S. at 324. Moreover, a petitioner may not simply allege that such evidence exists, but must present it to the habeas court, through affidavit of the witness. *See Weeks v. Bowersox*, 119 F.3d 1342, 1352–53 (8th Cir. 1997). Petitioner has not presented an affidavit from the codefendant. Nor does he proffer anything to suggest why such an affidavit would be deemed trustworthy.  Though sworn, affidavits are not convincing evidence of innocence because "the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations." *Herrera v. Collins*, 506 U.S. 390, 417 (1993).  Even if Petitioner had the sworn statement of the codefendant, such evidence from a coconspirator more than five years after the event would be viewed with significant skepticism.   Petitioner's personal assertion of innocence is also insufficient.  *See Hubbard v. Pinchak*, 378 F.3d 333, 340 (3rd Cir. 2004) ("The only evidence that Hubbard asserts is 'new' is what he terms as 'his own sworn testimony.' . . . A defendant's own late-proffered testimony is not 'new' because it was available at trial. Hubbard merely chose not to present it to the jury. That choice does not open the gateway.").

Actual innocence evidence "must be considered in light of the proof of Petitioner's guilt at trial." *Herrera,* 506 U.S. at 418.  Under *Schlup*, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327.  Here, the Arizona court of appeals found "there was substantial overlapping evidence against both defendants" at trial. (Doc. 12, Exh. J at 9.) Defendant was found inside a house containing 1,672 pounds of marijuana valued at $836,000.  When Petitioner answered the door after officers knocked, Petitioner was "'extremely agitated' and was talking back to the officers." (Doc 12, Exh. J at 4.)  He was "aggressive and did not want to come outside to speak" to the

officers. (*Id.*) He also had a key to the stash-house door in his pocket.  (*Id.*) Petitioner submits that he met the codefendant for the first time that evening. Petitioner claims he was merely at the house because the codefendant was intoxicated and needed someone to drive him home.  It is extremely unlikely that the codefendant would invite a random stranger into a home containing 1,672 pounds of marijuana, and thus betray the secrecy of the stash house to law enforcement or other criminals. In light of all of the evidence, Petitioner has not met his burden.

### 4. Evidentiary Hearing

An evidentiary hearing is not warranted regarding equitable tolling because the Court has accepted as true the facts Petitioner asserts regarding due diligence. A habeas petitioner asserting equitable tolling "should receive an evidentiary hearing when he makes 'a good-faith allegation that would, if true, entitle him to equitable tolling.'" *Roy v. Lampert*, 465 F.3d 964, 969 (9th Cir. 2006) (quoting *Laws v. Lamarque*, 351 F.3d 919, 919 (9th Cir. 2003). The Court has accepted as true Petitioner's assertion and dates regarding the potential deposition of the codefendant. The Court is also mindful that when evaluating a *pro se* habeas petitioner's allegations of such extraordinary circumstances, the court must "construe pro se habeas filings liberally." *Id.* (quoting *Allen v. Calderon*, 408 F.3d 1150, 1153 (9th Cir. 2005)).

Here, even construing his Petition liberally, Petitioner fails to allege extraordinary circumstances that kept him from filing his federal habeas petition on time. The Court has accepted his facts as true and finds an evidentiary hearing on the equitable tolling issue is unnecessary.

The Court further concludes that an evidentiary hearing on the *Schlup* gateway claim is not warranted. Petitioner's claim of innocence and the affidavit of an investigator are insufficient for the Court to "lose confidence in the outcome of the trial." *Schlup*, 513 U.S. at 316.  *See also Stewart*, 757 F.3d at  941 (noting that the "*Schlup* Court suggested that when considering an actual-innocence claim in the context of a request for an evidentiary hearing, the district court need not test the new evidence by a standard

appropriate for deciding a motion for summary judgment, but rather may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence") (citations and quotations omitted)).

## B. GROUND ONE: MOTION TO SUPPRESS

In Ground One, Petitioner asserts that his rights under the Fourth and Fourteenth Amendments were violated by an illegal, warrantless search. This claim was properly exhausted by Petitioner because he argued this precise point in his brief to the Arizona Court of Appeals. (Doc. 12, Exh. I.) It is however precluded as a claim in these proceedings.

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court established the limits of the "exclusionary rule" in relation to federal habeas proceedings. "We conclude that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494. The Court noted that the exclusionary rule was merely "a judicially created means of effectuating the rights secured by the Fourth Amendment." *Id.* at 482. Accordingly, they adopted this limitation on its application in federal habeas corpus actions after "weighing the utility of the exclusionary rule against the costs of extending it to collateral review of Fourth Amendment claims." *Id.* at 489.

The *Stone* rule only applies, however, where there was an "opportunity for full and fair consideration of [the defendant's] reliance upon the exclusionary rule with respect to seized evidence by the state courts at trial and on direct review." *Id.* "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz–Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996). *See Gordon v. Duran*, 895 F.2d 610, 613–14 (9th Cir. 1990) ("Given that [the petitioner] had an opportunity in state court for 'full and fair litigation' of his fourth amendment claim, the Constitution does not require the [the petitioner] be granted habeas corpus relief on the ground that evidence obtained in an

unconstitutional search or seizure was introduced at his trial.").

Petitioner litigated this claim before the state courts. He raised this issue in a motion to suppress where the trial court held an evidentiary hearing, heard oral argument, and ultimately denied his motion. (Doc. 12, Exhs. B, C, D, E.) Petitioner raised the issue on appeal, which was considered and denied. (Doc. 12, Exh. I.) Accordingly, Ground One is not cognizable and barred from consideration by *Stone*.

## C. GROUND TWO: MOTION TO SEVER

Petitioner's claim under Ground Two is unexhausted and procedurally defaulted. Petitioner argues no cause and prejudice to excuse this default.

Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted available state remedies. 28 U.S.C. § 2254(b). To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim").

A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which his claim is based. *See Baldwin*, 541 U.S. at 33. A "state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Id.* at 31–32. Thus, "a petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum. . . (2) through the proper vehicle, . . . and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).

The requirement that a petitioner exhaust available state court remedies promotes

comity by ensuring that the state courts have the first opportunity to address alleged violations of a state prisoner's federal rights. *See Duncan v. Walker*, 533 U.S. 167, 178 (2001); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Principles of comity also require federal courts to respect state procedural bars to review of a habeas petitioner's claims. *See Coleman*, 501 at 731-32. Pursuant to these principles, a habeas petitioner's claims may be precluded from federal review in two situations.

First, a claim may be procedurally defaulted and barred from federal habeas corpus review when a petitioner failed to present his federal claims to the state court, but returning to state court would be "futile" because the state court's procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims. *See Teague v. Lane,* 489 U.S. 288, 297-99 (1989)); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002). If no state remedies are currently available, a claim is technically exhausted, but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n. 1.

Second, a claim may be procedurally barred when a petitioner raised a claim in state court, but the state court found the claim barred on state procedural grounds. *See Beard v. Kindler*, 558 U.S. 53, 60-61 (2009). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claim has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 731–32. In this situation, federal habeas corpus review is precluded if the state court opinion relies "on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed,* 489 U.S. 255, 260 (1989).

A state procedural ruling is "independent" if the application of the bar does not depend on an antecedent ruling on the merits of the federal claim. *See Stewart v. Smith*, 536 U.S. 856, 860 (2002); *Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985). A state court's application of the procedural bar is "adequate" if it is "strictly or regularly followed." *See Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir.1994). If the state court occasionally excuses non-compliance with a procedural rule, that does not render its procedural bar inadequate.

*See Dugger v. Adams*, 489 U.S. 401, 410–12 n.6 (1989). "The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Coleman*, 501 U.S. at 732. Although a procedurally barred claim has been exhausted, as a matter of comity, the federal court will decline to consider the merits of that claim. *See Id.* at 729–32.

Ground Two is unexhausted because Petitioner did not identify a claim under the United States Constitution when he litigated this issue in state court. Proper exhaustion requires a petitioner to have "fairly presented" to the state courts the exact federal claim he raises on habeas by describing the operative facts and federal legal theory upon which the claim is based. *See, e.g.*, *Picard v. Connor*, 404 U.S. 270, 275–78 (1971) ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). A claim is only "fairly presented" to the state courts when a petitioner has "alert[ed] the state courts to the fact that [he] was asserting a claim under the United States Constitution." *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000) (quotations omitted); *see Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

A "general appeal to a constitutional guarantee," such as due process, is insufficient to achieve fair presentation. *Shumway*, 223 F.3d at 987 (quoting *Gray v. Netherland*, 518 U.S. 152, 163 (1996)); *see Castillo v. McFadden*, 399 F.3d 993, 1003 (9th Cir. 2005) ("Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory."). Similarly, a federal claim is not exhausted merely because its factual basis was presented to the state courts on state law grounds—a "mere similarity between a claim of state and federal error is insufficient to establish exhaustion." *Shumway*, 223 F.3d at 988 (quotations omitted); *see Picard*, 404 U.S. at 275–77.

Here, Petitioner's state argument did not reference any federal law. Petitioner's state argument read:

> Trial court erred by refusing to sever Appellant's trial from the trial of this co-defendant. Damaging video evidence depicting only the co-defendant was admitted at the joint trial. This evidence caused severe prejudice to Appellant's "mere presence" defense at trial. Appellant contends there is no other evidence linking him to the marijuana or drug paraphernalia offenses.

(Doc. 12, Exh. I at 5.)

Ground Two is unexhausted and procedurally defaulted because Petitioner cannot file another appeal or PCR on this issue in state court. Under Ariz. R. Crim. P. 31.3, the time for filing a direct appeal expires 20 days after entry of the judgment and sentence. Moreover, no provision is made for a successive direct appeal. Accordingly, direct appeal is no longer available for review of Petitioner's unexhausted claims. Petitioner is also barred from raising his claims by Arizona's time bars. Ariz. R.Crim. P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later." *See State v. Pruett*, 912 P.2d 1357, 1360 (App.1995) (applying Rule 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule). That time has long since passed.

### D.  GROUNDS THREE AND FOUR: PROSECUTORIAL MISCONDUCT AND ACTUAL INNOCENCE

Petitioner argued prosecutorial misconduct and actual innocence in the PCR petition filed with the trial court. Petitioner failed, however, to file a petition for review with the court of appeals after his PCR petition was denied by the trial court. The law "requires that before a state prisoner files a federal habeas petition, he or she must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999) (citation and quotation omitted). "In cases not carrying a life sentence or the death penalty, claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on

them." *Castillo*, 399 F.3d at 998 n.3 (9th Cir. 2005) (quoting *Swoopes*, 196 F.3d at 1010. These claims are unexhausted because Petitioner did not file for appellate review after his PCR denial.

Both claims are also procedurally defaulted. Petitioner waived the claims asserted in Grounds Three and Four by failing to raise them either on direct appeal or in a rule-compliant petition for post-conviction relief. *See State v. Shrum*, 220 Ariz. 115, 203 P.3d 1175, 1178 (Ariz.2009) (stating that "[r]ule 32.2(a) precludes collateral relief on a ground that either was or could have been raised on direct appeal or in a previous PCR proceeding.").

The state court ruled as follows regarding these claims:

> Defendant raises claims of prosecutorial misconduct. Because all of these claims refer to matters set forth on the record, they are precluded because they were waived by failure to object at trial or by failing to raise the issues on appeal.
> Defendant also raises the claims of actual innocence and of ineffective assistance of trial and appellate counsel. None of these are colorable.

(Doc. 12, Exh. U.)  Petitioner did not exhaust available state remedies with respect to his claims in Grounds Three and Four and a return to state court to present those claims would be futile because Arizona's procedural rules would bar presentation of these claims. Accordingly, these claims are unexhausted and procedurally defaulted.

**E.  CAUSE AND PREJUDICE**

A procedurally defaulted claim may not be barred from federal review, however, "if the petitioner can demonstrate either (1)'cause for the default and actual prejudice as a result of the alleged violation of federal law,' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Jones v. Ryan*, 691 F.3d 1093, 1101 (9th Cir. 2012) (quoting *Coleman*, 501 U.S. at 732); s*ee also Boyd v. Thompson*, 147 F.3d 1124, 1126-27 (9th Cir. 1998) (the cause and prejudice standard applies to *pro se* petitioners as well as to those represented by counsel). To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Cook v. Schriro*, 538 F.3d 1000, 1027 (9th Cir.

2008) (quoting *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). "Prejudice" is actual harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a petitioner must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1996). Where a petitioner fails to establish either cause or prejudice, the court need not reach the other requirement. *See Hiivala v. Wood*, 195 F.3d 1098, 1105 n.6 (9th Cir. 1999); *Cook*, 538 F.3d at 1028 n.13. Lastly, "[t]o qualify for the 'fundamental miscarriage of justice' exception to the procedural default rule" a petitioner "must show that a constitutional violation has 'probably resulted' in the conviction when he was 'actually innocent' of the offense." *Cook*, 538 F.3d at 1028 (quoting *Murray*, 477 U.S. at 496); *see also Schlup*, 513 U.S. at 329 (petitioner must make a credible showing of "actual innocence" by "persuad[ing] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eye--witness accounts, or critical physical evidence--that was not presented at trial." *Schlup*, 513 U.S. at 324.

In this case, Petitioner does not assert any basis sufficient to overcome the procedural bar. Petitioner's *pro se* status and ignorance of the law do not satisfy the cause standard. *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 908 (9th Cir. 1986); *Kibler v. Walters*, 220 F.3d 1151, 1153 (9th Cir. 2000) (affirming that "lack of knowledge" and "limited access to materials were insufficient to establish good cause"). Likewise, Petitioner does not establish that failure to consider his defaulted claim will result in a fundamental miscarriage of justice. "[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citation and quotation omitted). The Court has already considered and

rejected Petitioner's *Schlup* gateway claim.[6]  Petitioner's assertion and the affidavit by his investigator do not establish that no reasonable juror would have voted to find Petitioner guilty beyond a reasonable doubt.

### F. GROUND FOUR: FREESTANDING ACTUAL INNOCENCE CLAIM

Assuming that Petitioner's freestanding actual innocence claim under *Herrera v. Collins*, 506 U.S. 390 (1993) is cognizable in these proceedings,[7] the Court finds that Petitioner has not met his burden under this claim. "[T]he *Herrera* majority's statement that the threshold for a freestanding claim of innocence would have to be extraordinarily high, contemplates a stronger showing than insufficient of the evidence to convict." *See Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (en banc) (internal citations omitted). Petitioner failed to meet the lower standard of actual innocence under the *Schlup* gateway (*supra*, at 12-13), and therefore does not meet his burden to proceed on his *Herrera* claim.

### CONCLUSION

The record is sufficiently developed and the Court does not find that an evidentiary hearing is necessary for resolution of this matter. *See Rhoades v. Henry*, 638 F.3d 1027, 1041 (9th Cir. 2011); *Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010). Based on the above analysis, the Court finds that Petitioner's claims are untimely, precluded or procedurally barred from review, and Petitioner has not satisfied the burden to establish actual innocence. The Court will therefore recommend that the Petition for Writ of Habeas Corpus (Doc. 1) be denied and dismissed with prejudice.

---

[6] "Actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . [or] expiration of the statute of limitations." *Perkins*, 133 S. Ct. at 1928.

[7] The United States Supreme Court has not explicitly held that a "freestanding" claim of factual innocence, i.e., one unaccompanied by a substantive claim of constitutional error in trial proceedings, provides a basis for federal habeas relief in a non-capital case. *See Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014) ("We have not resolved whether a freestanding actual innocence claim is cognizable in a federal habeas corpus proceeding in the non-capital context, although we have assumed that such a claim is viable.").

**IT IS THEREFORE RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable, and because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this Report and Recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's Report and Recommendation. *See* Fed. R. Civ. P. 72.

Dated this 4th day of February, 2015.

Honorable John Z. Boyle
United States Magistrate Judge

22